```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                        :
UNITED STATES OF AMERICA,                                               :
                                                                        :
                -v-                                                     :      18-CR-303-1 (JMF)
                                                                        :
GERMAN MARMOLEJOS,                                                      :      MEMORANDUM OPINION
                                                                        :          AND ORDER
                                Defendant.                              :
                                                                        :
------------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

      Defendant German Marmolejos is charged in a one-count Indictment with distributing or possessing with the intent to distribute controlled substances. *See* Docket No. 11. Shortly before trial, Marmolejos's counsel raised the issue of Marmolejos's competency to stand trial. Accordingly, by Order entered October 11, 2018, the Court appointed Dr. Ziv Cohen, a forensic psychiatrist, to examine Marmolejos in an effort to determine whether he was competent. *See* Docket No. 28. Dr. Cohen produced a report, after which the Court held a three-day evidentiary competency hearing and heard testimony from four witnesses: Dr. Cohen, the Court-appointed expert; Dr. Edward Fernandez, a psychologist retained by Marmolejos's counsel; Homeland Security Investigations Special Agent David Gonzalez; and Roberto Toledo, a social worker.

      The relevant standards are undisputed. Pursuant to 18 U.S.C. § 4241(d), a defendant is incompetent to stand trial if he is "presently suffering from a mental disease or defect rendering him mentally incompetent to the extent that he is unable to understand the nature and consequences of the proceedings against him or to assist properly in his defense." It follows that a defendant who possesses both "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of

the proceedings against him" is competent, *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (internal quotation marks omitted), even if that defendant is presently suffering from a mental disease or defect, *see, e.g.*, *United States v. Vamos*, 797 F.2d 1146, 1150 (2d Cir. 1986) ("It is well-established that some degree of mental illness cannot be equated with incompetence to stand trial."); *accord United States v. Knohl*, 379 F.2d 427, 436 n.5 (2d Cir. 1967). In considering a defendant's competency, a court may consider, among other things, "medical opinion[s]" and its own "observation of the defendant's comportment." *United States v. Nichols*, 56 F.3d 403, 411 (2d Cir. 1995). The question of a defendant's competency is to be determined by a preponderance of the evidence. *See id.* at 410.[1]

Applying those standards here, the Court finds by a preponderance of the evidence that Marmolejos is competent to stand trial. First and foremost, the Court is persuaded by Dr. Cohen's thorough and credible report and testimony. Dr. Cohen — who was appointed by the Court and thus has no direct stake in the outcome — has extensive experience in forensic psychiatry and performing competency evaluations. Among other things, he has practiced for more than ten years as a board-certified psychiatrist and has maintained a forensic practice for approximately seven years, *see* Docket No. 47 ("Apr. 3 Hr'g Tr."), at 20; he completed specialty fellowships in forensic psychiatry, *see id.* at 21; he has published papers and given speeches on forensic psychiatry, and is a member of psychiatric and forensic psychiatric associations, *see id.* at 21-23; he teaches psychiatry at Weill Cornell Medical College, where he directs the forensic psychiatry curriculum and teaches a forensic psychiatry elective, *see id.* at 22; and he supervises

---

[1] Whether the Government or the defense bears the burden of proof with respect to competency is unsettled, but "the allocation of the burden of proof . . . affect[s] competency determinations only in a narrow class of cases where the evidence is in equipoise." *Nichols*, 56 F.3d at 410 (quoting *Medina v. California*, 505 U.S. 437, 449 (1992)). This is not such a case, so the Court need not resolve the question. *See id.*

the forensic psychiatry fellows at Columbia University, *see id*. In addition, he estimates that he has performed "more than a hundred" competency evaluations, at the behest of courts, prosecutors, and defense counsel. *See id.* at 23-24. And notably, of the defendants he has evaluated, he has found more incompetent than he can count; by contrast, he has opined only a few times, as he did here, that a defendant he had evaluated was malingering. *See id.* at 24, 56.

Based on his extensive experience and training, Dr. Cohen testified, credibly, that Marmolejos is "malingering" — that is, that he is intentionally "producing or exaggerating symptoms with a particular aim to benefit from being designated" incompetent. *Id.* at 27. As he explained, that conclusion is supported by ample evidence, including:

- The fact that, after his arrest, Marmolejos "requested an attorney," which indicates "that he had an understanding that he was in legal jeopardy and that an attorney would be able to assist him in that situation." *Id.* at 48; *see also id.* at 12 (testimony from Special Agent Gonzalez regarding Marmolejos's request for an attorney).[2]

- Marmolejos's selective communication style. Specifically, Marmolejos was forthcoming about "possible delusion[s]," "hallucinations," and in other "domains which would lead one to conclude he is ill," but was otherwise "highly non-verbal." *Id.* at 35, 41-42, 51-52. As Dr. Cohen explained, those communication patterns indicated that Marmolejos was being intentionally uncooperative, in part because those who suffer from schizophrenia tend to "become very zipped-up and uncomfortable" when asked about their mental health history. *See id.* at 43.

- Marmolejos's propensity "to provide non-sensical or obviously absurd answers" to basic questions. GX-2, at 4. As Dr. Cohen explained, for example, Marmolejos's claim that the evaluation was occurring in the middle of the night despite the fact that the sun was

---

[2] Of course, the question for the Court is whether Marmolejos is presently competent to stand trial, not whether he was competent at the time of his arrest. *Cf. Drope v. Missouri*, 420 U.S. 162, 181 (1975) ("Even when a defendant is competent at the commencement of his trial, a trial court must always be alert to circumstances suggesting a change that would render the accused unable to meet the standards of competence to stand trial."). That said, Marmolejos's ability to understand his circumstances and rationally decide to invoke his right to counsel at the time of arrest provides some evidence in support of a finding of competency today. *Cf., e.g.*, *Newfield v. United States*, 565 F.2d 203, 206 (2d Cir. 1977) (holding that a defendant's history of psychiatric treatment is a relevant, but not dispositive, consideration in a determination of his present competency). That is all the more true in light of Toledo's testimony, referenced below, that he did not see a change in Marmolejos's condition over time. *See* Docket No. 55 ("May 6 Hr'g Tr."), at 42.

3

visible through the windows was both inaccurate and "[in]consistent with mental illness." Apr. 3 Hr'g Tr. 37-38.

- Similarly, the inconsistency between Marmolejos's demonstrated capacities — calmly waiting for an appointment and promptly responding when his name is called, *id.* at 35, 67; sorting and delivering color-coded laundry in a job that requires working memory, long-term memory, spatial memory, and social skills, *see id.* at 41-42; driving, which requires similarly complicated cognitive processes and involves a written examination, both of which are incompatible with a "profound intellectual disability," *see id.* at 49-50; independently grooming, cooking, and generally caring for himself, *see id.* at 50; and maintaining a stable adult romantic relationship, *id.* at 50 — and the "very severe[,] profound mental retardation" that his score on the Folstein Mini Mental State Examination ("FMMSE") indicated, *see id.* at 52. Significantly, Dr. Cohen remarked that in his eleven years of practice, *see id.* at 20, he had "never seen someone score that low" on that cognitive test, *id.* at 44. Indeed, Marmolejos's score fell far beneath those of "people with advanced dementia" and would be more consistent with a person who was "totally delirious" or whose "brain [was] not functioning." *Id.* at 44-45.[3]

- The inconsistency between Dr. Cohen's experiences with Marmolejos and the experiences that Dr. Fernandez reported just weeks or months earlier. When speaking with Dr. Fernandez in March 2018, Marmolejos "demonstrate[d] a basic understanding of . . . informed consent," "was alert and fully oriented to the purpose, place, time and situation," and was able to recount sensitive details about his personal history. DX-8, at 3, 4-6, 8. When speaking with Dr. Fernandez in October 2018, Marmolejos again demonstrated an understanding of informed consent, reported that his lawyer was there to help him, and knew his lawyer's name "when prompted." DX-9, at 2, 4, 5. Yet when speaking with Dr. Cohen just four weeks later, Marmolejos stated that he did not have a lawyer, did not recognize his lawyer, and had never been arrested. GX-2, at 10. Overall, Dr. Cohen opined that Marmolejos's "clearly uncooperative" presentation "did not comport with the intelligent, articulate, and sensitive person" who had spoken to Dr. Fernandez. GX-2, at 11, 13.

- The fact that Marmolejos, despite experiencing purportedly severe schizophrenia, was "performing well" and had not received any "negative feedback" at work. Apr. 3 Hr'g Tr. 143.

---

[3]     Dr. Fernandez assigned no weight to Marmolejos's FMMSE score, in part based on his view that the FMMSE is a "screener" that can only clarify whether a patient's cognitive abilities fall into the "average" range as opposed to a psychologist-administered "test" that may be used to identify specific intellectual disabilities. *See* Docket No. 49 ("Apr. 11 Hr'g Tr."), at 189, 192, 239-40. Whatever the limitations on use of the FMMSE may be generally, the Court is persuaded by Dr. Cohen's testimony that Marmolejos's results on the test are noteworthy and consistent with malingering.

Dr. Cohen conceded that "legal stress could exacerbate symptoms of psychosis and . . . chronic PTSD." *Id.* at 143. But he found no evidence that Marmolejos had suffered the sort of mental deterioration that "would explain his sudden inability" to respond to questions that he answered just weeks prior — especially given that he was still driving, performing well at work, and otherwise functioning. *Id.* at 38-39; *see* Docket No. 49 ("Apr. 11 Hr'g Tr."), at 211.[4] This lack of evidence supports a finding of malingering because, as Dr. Cohen explained, "[a] common error in individuals who malinger . . . is to feign a level of intellectual impairment that is incompatible with the rest of their functioning and that would only be seen in cases of severe or even profound mental retardation." GX-2, at 11. Thus, taken together, the evidence provides ample support for Dr. Cohen's conclusion that Marmolejos is malingering — and, by extension, for a finding, by a preponderance of the evidence, that Marmolejos is able to understand the nature and consequences of the proceedings against him and to assist properly in his defense.

That conclusion is reinforced by the testimony of Toledo, Marmolejos's social worker. Toledo began working with Marmolejos on "supported employment" — everything from finding a job to ensuring that he gets to work on time and has no issues with his supervisors — in March 2018. Docket No. 55 ("May 6 Hr'g Tr."), at 40-42. The two initially met between twenty and thirty hours per month, which was more than most clients needed. *See id.* Toledo's contemporaneous notes report that he found Marmolejos "[p]leasant," "soft[-]spoken," "[p]unctual, respectful, alert," and "focused." GX-5, at 1. Although Marmolejos's dialogue was often "brief and unelaborated," his thought processes appeared "goal[-]directed and coherent."

---

[4]  Defense counsel does not suggest that mental deterioration explains the difference between Marmolejos's evaluations with Dr. Fernandez and Dr. Cohen. Instead, counsel appears to attribute any difference to Marmolejos's cooperation, attention, rapport, and efforts with different interviewers. *See* Docket No. 54 ("Def. Br."), at 3-4.

5

*Id.* For example, in response to a pre-employment survey, Marmolejos admitted that he would "need guidance [and] assistance," did not "read or write very well," and could "become frustrated [and] impulsive" when things did not work as he originally planned. GX-3, at 3-4. Soon after, though with "great effort," Toledo helped Marmolejos build a resume and complete a job application. *See* GX-5, at 1. While Marmolejos could answer some of the application's "simple questions," such as those asking for his address or social security number, "he had difficulty articulating or explaining" answers to more complex questions, such as those requiring a description of his prior employment. May 6 Hr'g Tr. 15-16. But despite this difficulty, Marmolejos responded appropriately to Toledo's questions. *See id.* at 16-17, 38. The two now meet only twice a month. *See id.* at 40, 42. Yet in the entire fourteen months he has known Marmolejos, Toledo has not detected any changes in his comportment. *See id.* at 42. That observation is consistent with Dr. Cohen's conclusion that there is no evidence of deterioration.

    Finally, the Court's own observations further bolster Dr. Cohen's conclusions. Marmolejos has been present and appropriately responsive in court proceedings — evidenced by his standing and being seated at the Court's direction, along with his prompt and unambiguous responses to the yes-or-no questions that the Court has asked him. *See, e.g.*, *id.* at 2 (confirming, through a translator, that he understands the Court and knows that he may advise the Court of any translation issues); Apr. 11 Hr'g Tr. 169-70 (same); Apr. 3 Hr'g Tr. 2 (same); Docket No. 33, at 2 (same); Docket No. 29, at 2 (same); Docket No. 13, at 2-4 (same, and also confirming that his name was pronounced correctly, that he had seen a copy of the indictment, and that he had discussed it with his former attorney). In addition, at his arraignment, Marmolejos moved beyond simple yes-or-no responses by affirmatively waiving the public reading of the indictment against him and pleading not guilty. Docket No. 13, at 2-4. These responses stand in contrast to

Marmolejos's non-answers, wrong answers, selective answers, and oddly formalistic answers to questions posed to him by the Court-appointed expert. *See, e.g.*, GX-2, at 6 (stating, through a translator, "I do not recall" when asked if he had been arrested); *see id.* at 4 (stating, through a translator, that it was nighttime although the sun was visible through the windows). These behaviors — and especially the ones observed over the course of the competency hearing — reinforce the conclusion that Marmolejos possesses an understanding of the proceedings.

To be sure, Marmolejos's expert, Dr. Fernandez, opined that Marmolejos is not competent to stand trial. *See* Apr. 11 Hr'g Tr. 202.[5] But, mindful of its discretion to "decide which of . . . competing medical views to credit," the Court finds Dr. Cohen's analysis to be the more compelling of the two. *United States v. Villegas*, 899 F.2d 1324, 1341-42 (2d Cir. 1990) (citing cases for the proposition that a district court may weigh "two permissible views of the evidence as to competency"). As an initial matter, Dr. Fernandez had never performed a formal competency evaluation before doing so in this case. *See* Apr. 11 Hr'g Tr. 217, 232. Nor did he conduct any tests for malingering, although he testified that such tests were generally available. *See id.* at 192-95; *see also id.* at 212-13. Further, there are some inconsistencies in Dr. Fernandez's testimony — for example, the opinions that Marmolejos both "had been . . . decompensating or experiencing a lot of symptoms" between his first and second set of evaluations, *id.* at 174,[6] and had exhibited *no* significant change in his presentation between

---

[5]     Dr. Fernandez based this conclusion on his medical opinion that Marmolejos does not "understand[] or grasp[] the gravity of the situation," and is merely "going through motions as he is being directed and [is] therefore not able to engage or work with his attorney in a meaningful way." Apr. 11 Hr'g Tr. 202. The fact that Marmolejos drives and is employed did not change that opinion, as Dr. Fernandez opined that both tasks entailed "rote action" that could be "memorized after constantly repeating." *See id.* at 203, 206.

[6]     This testimony is particularly troubling in light of Toledo's contrary testimony that Marmolejos has been "pretty consistent" over the fourteen months that they have worked

them, *id.* at 211.  Those inconsistencies highlight the conceded differences in the tenor of Dr. Fernandez's April report, which was aimed at mitigation, and the tenor of his October report, which was aimed at competency.  *See id.* at 210-11; *compare* DX-8, *with* DX-9.  While they do not independently render Dr. Fernandez's testimony not credible, they are more than sufficient to render it *less* credible than Dr. Cohen's testimony.  Finally, the Court is unpersuaded by defense counsel's efforts to attribute the differences between Marmolejos's comportment with Dr. Fernandez and Dr. Cohen to a "lack of effort and apparent lack of rapport" with the latter expert.  Docket No. 54 ("Def. Br."), at 4.  If anything, that argument weighs in favor of finding Marmolejos competent as it suggests an ability to function when he chooses; indeed, it is strikingly consistent with Dr. Cohen's own conclusion that Marmolejos made deliberate "choices regarding his interactions with the examiner."  GX-2, at 13.

Based on the foregoing, the Court finds that Marmolejos possesses both the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him" necessary to render him competent.  *See Dusky*, 362 U.S. at 402.[7]  Accordingly, the Court finds, pursuant to 18 U.S.C. § 4241(d), that Marmolejos is competent to stand trial.

---

together.  May 6 Hr'g Tr. 42.  *But see* DX-7, at 9 (indicating, as of September 19, 2018, that Marmolejos's psychiatric condition was generally "[d]eteriorating").

[7]    To be clear, a finding of malingering "does not necessarily imply that Mr. Marmolejos does not have mental illness or intellectual disability."  GX-2, at 13; *see* Def. Br. 5.  Accordingly, although Dr. Cohen further opined that some of Marmolejos's exhibited symptoms were inconsistent with mental illness, *see* Apr. 3 Hr'g Tr. 35-36, the Court need not and does not make a finding as to whether Marmolejos genuinely suffers from schizophrenia, post traumatic stress disorder, or any other disability.  The relevant inquiry is not whether Marmolejos suffers from a particular mental illness, but rather whether he has been rendered unable to either understand the nature and consequences of the proceedings against him or assist properly in his defense.  Dr. Cohen's well-supported medical opinion enables the Court to answer that question: He has not.

The parties shall appear on **May 28, 2019, at 3:15 p.m.** in **Courtroom 1105** of the Thurgood Marshall Courthouse, 40 Centre Street, New York, New York for a conference to set a new trial date. Counsel shall confer on possible dates in advance of the conference.

SO ORDERED.

Dated: May 21, 2019
      New York, New York

                                            JESSE M. FURMAN
                                        United States District Judge